CA 08 209

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ROBERT BELL** | : | |
| **AND DONNA BELL** | : | |
| ***Plaintiff,*** | : | |
| **vs.** | : | **Civil Action No:** |
| | : | |
| **DAVOL INC. and C. R. BARD INC.** | : | |
| ***Defendants.*** | : | |

## COMPLAINT

COMES NOW, PLAINTIFFS ROBERT BELL AND DONNA BELL ("Plaintiffs" and hereby files this *Original Complaint* complaining of DAVOL INC. and C.R. BARD INC. (hereinafter collectively referred to as "Defendants"), and for cause of action would respectfully show unto the Court as follows:

### I. PARTIES

1. Plaintiffs are citizens and residents of Scotland Neck, North Carolina.

2. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Kugel Mesh Patch ("Kugel Patch") and the Ventralex Hernia Patch and is located at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate

parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch and the Ventralex Hernia Patch. It also manufactures and supplies DAVOL with material that forms part of the Ventralex Hernia Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## II. JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

6. This Court has personal jurisdiction over Defendants because they are either incorporated in Rhode Island or, at all times relevant, conducted substantial and continuous business in the State of Rhode Island designing, manufacturing, and/or distributing the defective product that is the subject of this action.

## III. FACTS

7. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two layers of polypropylene mesh that surround a flexible plastic ring. The surgeon places the mesh patch in a small incision. The surgeon folds the patch and places it at the site of the hernia. The released ring is then designed to spring back into its original shape, flattening the patch. The mesh material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

8. The Ventralex Hernia Patch was a product marketed by DAVOL, as a mesh to be used in repairing hernias and provide extra reinforcement to the hernia defect.

9. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Ventralex Hernia Patch that was implanted into Plaintiff.

10. The Ventralex Hernia Patch was designed and is manufactured and distributed by BARD and their subsidiary, DAVOL, who owns the patent on the device that was inserted into Mr. Bells's body.

11. Davol's Composix Kugel Patch consists of 1) "a memory recoil ring" component, 2) a layer of ePTFE, and 3) a layer of polypropylene mesh.

12. No later than September 2004, Defendants uncovered serious problems with the weld process involving the "memory recoil ring." Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. Upon information and belief, these weld issues existed from the time the patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld from Mr. Bell, Mr. Bell's physicians, the FDA, and all other individuals who had been implanted or would be implanted with a product using the memory recoil ring.

13. During the spring and summer period of 2005, there was a substantial increase in the number of complaints with the Composix Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Composix Kugel Patch manufacturing hold, and it was not until December 8, 2005 that the Defendants

finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Mr. Bell, Mr. Bell's physicians, the Federal Drug Administration ("FDA"), and all other individuals who had been implanted or would be implanted with a patch containing the memory recoil ring of the numerous complaints and complications they were on notice of, nor of the holds in effect.

14. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported. Plaintiff was given no notice of the recall even though the Kugel Patch implanted in her body contained the "memory recoil ring".

15. On March 24, 2006, the initial Class I recall of the Composix Kugel Patch was expanded to include additional types and lot numbers.

16. On January 10, 2007, the initial Class I recall of the Composix Kugel Patch was further expanded to include the large sized Composix Kugel Patch (oval and circle) due to additional reports of memory recoil ring breakage and potential for breakage of the memory recoil ring.

17. On January 28, 2008, Chief U.S. District Judge Lisi, overseeing the Kugel Mesh Hernia Patch Products Liability Litigation (MDL-1842), clarified by order that the scope of MDL-1842 encompassed alleged defects associated with additional Davol/Bard

hernia repair products, including the Ventralex Hernia Patch used for Mr. Bell's hernia repair.

18. The Ventralex Hernia Patch manufactured and distributed by Davol, contains the components that make up the Kugel Mesh Patch, 1) a "memory recoil ring" component, 2) a layer of ePTFE, and a 3) layer of polypropylene mesh.

19. On or about December 17, 2004, Plaintiff Robert Bell underwent surgery for repair of a ventral hernia. A Ventralex Hernia Patch Mesh, Catalogue number 430D253 and Lot number 003321 was implanted to repair the hernia defect.

20. The Ventralex Hernia Patch implanted in Mr. Bell was designed, manufactured, sold and distributed by Defendants to be used by surgeons for hernia repair surgeries and was further represented by Defendants to be an appropriate, cost-effective and suitable product for such purpose.

21. At the time of his operation, Mr. Bell was not informed of, and had no knowledge of, the complaints, known complications and risks associated with the Ventralex Hernia Patch.

22. A malfunction of this device can lead to bowel perforations and/or chronic intestinal fistulae (abdominal connections or passageways between the intestines and other organs).

23. In the recall notices, DAVOL lists symptoms that could be associated with product failure such as unexplained or persistent abdominal pain, fever, tenderness at the implant site or other unusual symptoms in the recall notice.

24. In the recall, DAVOL lists conditions that could be associated with product failure, including bowel obstruction, perforation or fistula, abdominal wall pain or infection, palpable abdominal wall mass, migration or movement of the ring to the

abdominal wall, perineum or intra-abdominal organs.

25. The products affected by the recall were distributed to customers worldwide.

26. The Ventralex Hernia Patch implanted into Mr. Bell was manufactured in the same or in a similar manner as the recalled patches. Mr. Bell's Ventralex Hernia Patch contained the same or similar "memory recoil ring," and the same or similar polypropylene mesh, and the same or similarly ePTFE layer. Plaintiff suffered symptoms and injuries consistent with the symptoms and injuries described by the recall information as suffered by the other individuals affected by the defective Kugel Patches.

27. Plaintiffs were never informed by Defendants of the defective, dangerous, and recalled nature of the Ventralex Hernia Patch and memory recoil ring which had been implanted until well after discovering BARD's and DAVOL's FDA recall of the Composix Kugel Patch.

28. Neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the Ventralex Hernia Patch or that this unreasonably defective condition was the cause of Plaintiff's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Composix Kugel Patch and its "memory recoil ring".

29. On March 24, 2006, Plaintiff underwent surgery for removal of his gallbladder.

30. On March 24, 2006, the surgeon notes in the medical records the presence of severe and extensive adhesions and scaring of a large piece of mesh.

31. The surgeon documents in the operative report specifically, "extensive

adhesions of the transverse colon to the abdominal wall, adhesions of the liver to the abdominal wall, extensive scarring to the large piece of mesh that was placed where you could see round screw in staples," "the extensive right side adhesion with the colon stuck to the abdomen, there were open spaces that could be seen, but the gallbladder could not even be evaluated secondary to the fact of extensive adhesion," "the mesh extended all of the way over towards the edge of the rectus muscle," and "there were adhesions to the liver bed."

32. Due to the extensive adhesions found at the time of the March 24, 2006 surgery, the Plaintiff underwent an additional unplanned surgery as the surgeon was forced to move from the planned laparoscopy cholecystectomy to a full open abdominal exploration and cholecystectomy.

33. Mr. Bell has suffered and will continue to suffer physical pain and mental anguish.

34. Mr. Bell has also incurred substantial medical bills and has suffered loss of other monies due to the defective Ventralex Hernia Patch that was implanted in his body.

35. DAVOL and BARD withdrew a large number of the Composix Kugel Patches as a result of the high complication and failure rate of the memory recoil ring, which is of the same or similar materials and construction as Mr. Bell's Ventralex Hernia Patch.

36. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

37. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with the Ventralex Hernia Patch and the memory recoil ring prior to the time the public was made aware.

38. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design of their Ventralex Hernia Patch and the memory recoil ring.

39. Upon information and belief, DAVOL and BARD were aware of the defects in the manufacture and design of the memory recoil ring and chose not to issue a recall on all products containing the memory recoil ring, including the Ventralex Hernia Patch implanted in the Plaintiff, in the face of the high degree of complication and failure rates.

## IV. CAUSES OF ACTION

### COUNT I: NEGLIGENCE

40. Plaintiffs re-allege and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

41. Defendants DAVOL and BARD were negligent to Plaintiffs in the following respects:

42. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Ventralex Hernia Patch.

43. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Ventralex Hernia Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure Ventralex Hernia Patch users.

44. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Ventralex Hernia Patch, that they were unreasonably dangerous and unsafe for the use and purpose for which it was intended.

45. DAVOL and BARD were aware of the probable consequences of the Ventralex Hernia Patch. DAVOL and BARD knew or should have known the Ventralex Hernia Patch would cause serious injury and they failed to disclose the known or knowable risks associated with the Ventralex Hernia Patch. Furthermore, DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. Bell.

46. Defendants DAVOL and BARD owed a duty to Mr. Bell to adequately warn him and his treating physicians of the risks of breakage, separation, tearing and splitting associated with the Ventralex Hernia Patch and the resulting harm and risk it would cause patients.

47. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Ventralex Hernia Patch.

48. As a direct and proximate result of the duties breached, the Ventralex Hernia Patch used in Mr. Bell's hernia repair surgery failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

49. As a direct and proximate result of DAVOL's and BARD's negligence, Mr. Bell suffered severe pain, injuries and damages.

50. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Ventralex Hernia Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II: VIOLATION OF THE R.I. DECEPTIVE TRADE PRACTICES ACT

51. Plaintiffs re-allege and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

52. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with Mr. Bell in the following respects:

53. Defendants DAVOL and BARD are merchants who study, test, design, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Ventralex Hernia Patch for hernia repair surgery.

54. Defendants DAVOL and BARD knowingly committed unfair and deceptive in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Ventralex Hernia Patch for hernia repair surgery.

55. Defendants DAVOL and BARD knowingly committed unfair and deceptive trade practices when they failed to safely design and construct an effective Ventralex Hernia Patch for hernia surgery.

56. Defendants DAVOL and BARD knew or reasonably should have known that Ventralex Hernia Patches were at risk while they were engaging in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or selling of the Ventralex Hernia Patch for hernia repair surgery. And specifically, Defendants knew or reasonably should have known that the "memory recoil ring" posed a significant risk of breakage, separation, migration, tearing and splitting after placement in the intra-abdominal space that posed the danger of severe harm and/or death to patients.

57. Despite their awareness of the risks posed by the Ventralex Hernia Patches, Defendants DAVOL and BARD did not inform the FDA nor the general public at large prior to the December 2005 recall of its knowledge concerning the patches susceptibility to failure and the dangers posed to patients of the Ventralex Hernia Patches.

58. Indeed, in violation of the R.I. Deceptive Trade Practices Act, Defendants DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches for hernia repair.

59. DAVOL's and BARD's actions all occurred while they were engaged in trade and commerce, and all such conduct occurred during the course of their business.

60. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Ventralex Hernia Patch after obtaining knowledge that they were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifies an award of additional damages for

aggravating circumstances in a sum which will serve to deter DAVOL, BARD, and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III: STRICT PRODUCT LIABILITY

61. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

62. Defendants DAVOL and BARD are strictly liable to Plaintiffs in the following respects:

63. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Ventralex Hernia Patch for hernia repair surgery.

64. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. While the Plaintiff's Ventralex Hernia Patch was not included in the Class I recall, it is included in the same product line, in that it also contains the "memory recoil ring" and polypropylene mesh as in the recalled products.

65. At all times mentioned, the Ventralex Hernia Patch was substantially in the same condition as when it left the possession of DAVOL.

66. The Ventralex Hernia Patch implanted into Mr. Bell was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

67. Ventralex Hernia Patch, like the one found in Mr. Bell, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended

use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiffs as follows:

i. The Ventralex Hernia Patch was sold in a defective condition by design and manufacture;

ii. The Ventralex Hernia Patch as designed and manufactured was unsafe to Mr. Bell;

iii. The Ventralex Hernia Patch as designed and manufactured was unreasonably dangerous to Mr. Bell;

iv. The Ventralex Hernia Patch did not perform safely as an ordinary consumer/patient, like Mr. Bell, would expect;

v. The Ventralex Hernia Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Ventralex Hernia Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Ventralex Hernia Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Ventralex Hernia Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Ventralex Hernia Patches for hernia repair surgery as will be learned during discovery.

68. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Ventralex Hernia Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

70. Defendants DAVOL and BARD are liable to Plaintiffs for the negligent infliction of emotional distress in the following respect:

71. Plaintiffs suffered severe emotional distress, which was a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Ventralex Hernia Patch for hernia repair surgery.

72. Plaintiffs suffered severe emotional distress, which was a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Ventralex Hernia Patch for hernia repair surgery.

73. Therefore, DAVOL and BARD are liable to Plaintiffs.

74. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Ventralex Hernia Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

75. Plaintiff re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

76. Defendants DAVOL and BARD are liable to Plaintiffs for the intentional infliction of emotional distress in the following respect:

77. Plaintiffs suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Ventralex Hernia Patch for hernia repair surgery.

78. Plaintiffs suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Ventralex Hernia Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Bell.

79. Therefore, DAVOL and BARD are liable to Plaintiffs.

80. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Ventralex Hernia Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for

aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI: BREACH OF IMPLIED WARRANTY

81. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

82. Defendants DAVOL and BARD are liable to Plaintiffs for their breach of implied warranty in the following respect:

83. DAVOL and BARD sold the Ventralex Hernia Patch that was implanted in Mr. Bell. DAVOL and BARD impliedly warranted to Mr. Bell, his physicians and health care providers that the Ventralex Hernia Patch was of merchantable quality and safe for the use for which they were intended.

84. DAVOL and BARD knew or reasonably should have known that the Ventralex Hernia Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

85. Mr. Bell, his physicians, and his health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Ventralex Hernia Patch was fit for such use.

86. When the Ventralex Hernia Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD, in that they had very

dangerous propensities when used as intended and implanted into a patient's body and, as a result, could cause serious injury of harm or death to the end user.

87. As a result of DAVOL and BARD's conduct and actions, Plaintiffs suffered such injuries and damages.

88. As such, Defendants DAVOL and BARD breached the implied warranty of merchantability are liable to Mr. Bell and Mrs. Bell for his injuries and the costs they incurred as a result from using the defective Ventralex Hernia Patch.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VII: FAILURE TO WARN

89. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

90. In the course of business, DAVOL and BARD designed, manufactured and sold the Ventralex Hernia Patch to Albemarle Hospital of Elizabeth City, North Carolina for hernia repair surgeries.

91. In performing Mr. Bell's hernia repair surgery, the operating physician used and inserted into Mr. Bell one of the Ventralex Hernia Patch that Albemarle Hospital of Elizabeth City purchased from Defendants.

92. At the time of the design, manufacture and sale of the Ventralex Hernia Patch, and more specifically at the time Mr. Bell received the Ventralex Hernia Patch, they were defective and unreasonably dangerous when put to their intended and

reasonably anticipated use. Further, the Ventralex Hernia Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Ventralex Hernia Patch.

93. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the Ventralex Hernia Patch devices. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Ventralex Hernia Patch, including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

94. The dangerous and defective conditions in the Ventralex Hernia Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Bell had his hernia repair surgery, the Ventralex Hernia Patch was in the same condition as when manufactured, distributed and sold.

95. Plaintiffs did not know at the time of surgery that the Ventralex Hernia Patch placed during Mr. Bell's surgery, nor at any time prior thereto, of the existence of the defects or dangerous propensities in the Ventralex Hernia Patches.

96. Plaintiffs suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

97. As such, Defendants breached their duty to warn about known defects and are liable to Plaintiff for the injuries sustained and the costs incurred as a result of using the Ventralex Hernia Patch.

98. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Ventralex Hernia Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiffs respectfully request judgment in her favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

## COUNT VIII: FRAUD

99. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein.

100. In the course of business, DAVOL and BARD designed, manufactured and sold the Ventralex Hernia Patch for hernia repair surgeries.

101. At the time of the design, manufacture and sale of the Ventralex Hernia Patch, and more specifically at the time Mr. Bell received the Ventralex Hernia Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Ventralex Hernia Patch were not accompanied by proper warnings regarding significant adverse consequences associated with the Ventralex Hernia Patch.

102. Defendants BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from Mr. Bell, Mr. Bell's physicians, the FDA, and the general public even though these

significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

103. BARD and DAVOL fraudulently represented to Plaintiffs, Mr. Bell's physicians, and the general public that the Ventralex Hernia Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Ventralex Hernia Patch which likely could, and would, cause injuries such as those suffered by Mr. Bell.

104. Plaintiffs and Mr. Bell's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Ventralex Hernia Patch to be implanted.

105. As a direct and proximate result of Plaintiffs reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Plaintiffs were seriously and permanently injured.

106. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Ventralex Hernia Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

## COUNT IV: LOSS OF CONSORTIUM

107. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs as though fully set forth herein..

108. Plaintiff Donna Bell is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such she is entitled to the comfort and enjoyment of his society and services.

109. As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Donna Bell has been deprived of her spouse's companionship, services, solace, consortium, affection and attention to which he/she is entitled.

110. As a result of the foregoing, Plaintiff Donna Bell has been and will continue to be injured and damaged.

**Wherefore**, Plaintiffs demand judgment for all damages available to him/her under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS.**

Plaintiffs, ROBERT BELL and
DONNA BELL
By their Attorneys,

Leah J. Donaldson

Donald A. Migliori (#4936)
Vincent L. Greene (# 5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903
401-457-7700
401-457-7708 FAX

Michael Schmidt
THE SCHMIDT FIRM LLP
2911 Turtle Creek Blvd.
Suite 1400
Dallas, Texas 75219
214-521-4898
214-521-9995 FAX

Teresa C. Toriseva
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Edward Wallace
Mark Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602
312-346-2222
312-346-0022 FAX